

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-23-00401-CV

_____

IN RE PATRICIA HARVEY AND KENNETH B. CHAIKEN, Relators

---

Original Proceeding
431st District Court of Denton County, Texas
Trial Court No. 22-5037-431

---

Before Kerr, Birdwell, and Womack, JJ.
Memorandum Opinion by Justice Kerr

# MEMORANDUM OPINION

Relators Patricia Harvey and Kenneth B. Chaiken petitioned this court for a writ of mandamus after the trial court ordered them to pay Real Party in Interest Corvalla, Ltd. $30,000 in sanctions and refused to defer or stay payment of the sanctions or sever the sanctions order so that it would become final and appealable. We deny Relators' petition in part and conditionally grant it in part.

## Background

Because the merits of the underlying litigation are not at issue in this original proceeding, we will briefly summarize only the pertinent facts. Last December, Corvalla filed a verified motion for sanctions against Relators, alleging that they had "engaged in improper tactics designed to abuse the judicial process." Corvalla requested that the trial court award "the reasonable attorneys' fees incurred by Corvalla as a result of [Relators]' delay practices." Relators filed a verified response, and on May 1, 2023, the trial court granted Corvalla's motion and ordered Relators to pay Corvalla "the total sum of $30,000.00 within thirty (30) days . . . as a result of [their] improper actions, which includes costs and fees related to or arising from delays during [their] abandoned interlocutory appeal,[1] fees associated with [their] improper conduct . . . in th[e trial c]ourt, and fees relating to preparing this Motion for

---

[1]During the pendency of the underlying litigation, Relators filed an interlocutory appeal, which we dismissed on their unopposed motion. *Chaiken v. Corvalla, Ltd.*, No. 02-22-00369-CV, 2022 WL 17351585, at *1 (Tex. App.—Fort Worth Dec. 1, 2022, no pet.) (mem. op.).

Sanctions." On June 1, 2023, Relators filed a motion, supported by Relator Chaiken's affidavit, asking that the trial court "defer payment of the sanction until after a final judgment in this case . . . or at least until th[e trial c]ourt c[ould] consider and rule on [their] motion to reconsider."[2] That same day, Relator Chaiken—who had been representing himself and his wife, Relator Harvey, in the trial court proceedings[3]—also filed his motion to withdraw as counsel. The trial court granted the motion and ordered Relator Chaiken withdrawn as counsel for Relators on June 2, 2023.[4]

Corvalla filed a response opposing Relators' motion to defer and moved the trial court to compel payment. Corvalla attached exhibits in support of its argument that compelling Relators to pay sanctions immediately was "necessary to deter [Relators] from further improper conduct" and would not have a preclusive effect on the litigation. Concerning the no-preclusive-effect prong, for example, Corvalla claimed that Relator Chaiken had "recently offered to pay *millions* both for the entire Corvalla Condominium project and for another unit owner's unit." [Emphasis in original.] Corvalla also alleged that on May 16, 2023, Relators had filed a separate

---

[2]The motion represented that Counsel for Corvalla "ha[d] agreed to suspend the payment deadline until June 2, 2023 to allow for the filing of this motion, which it oppose[d]."

[3]Relators also had other counsel, including Relator Chaiken's brother.

[4]According to the mandamus petition, Relator Chaiken is currently representing himself in his capacity as an attorney; Relator Harvey is represented in this court by Relator Chaiken's brother and by another attorney.

lawsuit—alleging construction issues at the same condominium complex at issue in the present lawsuit—against Corvalla Condominiums Association, Inc. and others in Dallas County.

Relators filed a reply, arguing that "the sanction order has had its intended [e]ffect[,] Kenneth Chaiken has withdrawn as counsel, . . . and [Relators] have not engaged in any of the same conduct made the basis of" the sanctions order. They addressed Corvalla's arguments and evidence regarding their ability to pay the sanctions:

> The financial strain presented by the sanction award has not been offset by the sale of [Relators]' residence and condominium interests. The sale was not profitable after deductions for commissions, closing costs, and moving costs. [Relators]' offer to purchase the [other] unit demonstrates nothing about the sanction's impact upon [them]. As the email about [Relators]' offer reveals, if [they] were to buy the [other] unit for investment purposes (which was dependent upon due diligence related to its condition), they would have had to borrow money to accomplish such a purchase, just like they had to borrow money to buy a new home to live in after their Corvalla unit became unlivable. And Corvalla ignores the reality that the [Relators]' offer to [the other unit owner] was nothing more than an attempt to mitigate the injury and harm caused by Corvalla in the first place, at a time when Corvalla was assuring residents like [Relators] that continuing to live at Corvalla was a good idea, because remediation of defects was forthcoming.

> As for an October 2022 settlement offer that involved buying Corvalla, Ltd. out of the Project, that offer was made not only well before the May 1, 2023 sanctions order but also well before . . . it became known to [Relators] and others just how serious and overwhelming the scope of the problems [is] at the property. And, even then, that settlement offer would have entailed [Relators'] putting together an investor group to purchase and take on the herculean task of remediating Corvalla's problems. Corvalla's counsel's estimate that such an offer "would total several million dollars" is a bit disingenuous

4

considering that, at the time, Corvalla, Ltd. never responded to the offer or otherwise stated a purchase price it would entertain for the entire project.

Relators also explained that they had filed suit against the condominium association and management company in Dallas County because they believed that a provision in the project's "Declarations" required that venue lie in Dallas County.

On August 24, 2023, the trial court heard Relators' motion to defer and Corvalla's motion to compel. The next day, the trial court signed an order denying the motion to defer and granting the motion to compel. The trial court found that "the sanctions award of $30,000.00 against [Relators] does not have a preclusive effect on [their] access to the courts" and that "immediate payment . . . will not impair [Relators'] access to the courts nor their ability to continue this litigation." The trial court ordered Relators to pay Corvalla "the total sum of $30,000.00, pursuant to the [sanctions o]rder, within 14 days" of the trial court's August 25, 2023 order.

On September 7, 2023, Relators filed an "Emergency Motion to Sever Sanctions Award and Stay Payment Obligation Pending Appeal." They requested that the trial court (1) sever the sanctions order into a separate cause so that it could be appealed independently of the merits of the remaining claims between the parties and (2) stay the September 8, 2023 deadline to pay to allow for an appeal with supersedeas. Corvalla filed a response, and the trial court held a hearing on September 21, 2023; denied the motion to sever and stay; and extended the deadline for payment to October 31, 2023. The trial court found that "the sanction amount does not

significantly impair [Relators]' willingness or ability to continue this litigation." Relators subsequently sought mandamus relief in this court. On our own initiative, we stayed the sanctions award and the trial court's orders denying Relators' motion to defer, granting Corvalla's motion to compel, and denying Relators' motion to sever and stay. *See* Tex. R. App. P. 52.10(b).

## Discussion

### I. Mandamus

Mandamus relief is an extraordinary remedy. *In re Acad., Ltd.*, 625 S.W.3d 19, 25 (Tex. 2021) (orig. proceeding). The party seeking mandamus relief must show both that the trial court clearly abused its discretion and that the party has no adequate remedy by appeal. *In re Allstate Indem. Co.*, 622 S.W.3d 870, 875 (Tex. 2021) (orig. proceeding).

A trial court abuses its discretion when a decision is arbitrary, unreasonable, and without reference to guiding principles. *Id.*; *see Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992) (orig. proceeding). We defer to a trial court's factual determinations that have evidentiary support, but we review the trial court's legal determinations de novo. *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding). An error of law or an erroneous application of the law to the facts is always an abuse of discretion. *See In re Geomet Recycling LLC*, 578 S.W.3d 82, 91–92 (Tex. 2019) (orig. proceeding).

An appellate remedy's adequacy has no specific definition; "the term is 'a proxy

6

for the careful balance of jurisprudential considerations'" that implicate both public and private interests, and "its meaning 'depends heavily on the circumstances presented.'" *Allstate Indem. Co.*, 622 S.W.3d at 883 (quoting *In re Prudential Ins. of Am.*, 148 S.W.3d 124, 136 (Tex. 2004) (orig. proceeding)); *In re Ford Motor Co.*, 165 S.W.3d 315, 317 (Tex. 2005) (orig. proceeding) (quoting *Prudential*, 148 S.W.3d at 136); *see also In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 464 (Tex. 2008) (orig. proceeding) ("Whether a clear abuse of discretion can be adequately remedied by appeal depends on a careful analysis of costs and benefits of interlocutory review."). An appellate remedy is adequate when any benefits to mandamus review are outweighed by the detriments. *Prudential*, 148 S.W.3d at 136.

## II. Relators' First Issue: Trial Court's Refusal to Defer the Sanctions

In their first issue, Relators argue that the trial court abused its discretion in refusing to defer the payment, thus blocking their right to appeal the sanctions order before payment was required. Based on *In re Casey*, 589 S.W.3d 850 (Tex. 2019), and *Braden v. Downey*, 811 S.W.2d 922 (Tex. 1991), Relators contend that "the best practice when a trial court deems a large monetary sanction necessary is to delay the sanctioned party's obligation to pay until after judgment and appeal." In *Braden*, the supreme court held that payment of monetary sanctions must be deferred until rendition of an appealable judgment if (1) the sanctioned party contends that immediate payment precludes its access to the courts and (2) the trial court does not "make[ ] express written findings, after a prompt hearing, as to why the award does

7

not have such a preclusive effect." 811 S.W.2d at 929 (quoting *Thomas v. Cap. Sec. Servs. Inc.,* 836 F.2d 866, 882–83 n.23 (5th Cir. 1988)). The *Casey* court clarified that although

> an opposing party may be awarded sanctions before an appealable judgment is rendered, . . . *Braden* concerns are implicated based on a sanction order's requirement that the sanction be paid in advance of an appealable judgment, and when properly invoked, the *Braden* process favors deferral by making that the default unless the trial court supports the requirement of an upfront payment by (1) holding a "prompt hearing" and (2) making "express written findings" that the immediate-payment requirement will not significantly impair a party's willingness or ability to continue the litigation.

589 S.W.3d at 856 (quoting *Braden*, 811 S.W.2d at 929–30).

## A. Abuse of Discretion

Relators contend that they argued and proved in the trial court "that compelling payment of the sanction now effectively leaves them without an adequate remedy by appeal and threatens their ability and/or willingness to continue with this litigation." Corvalla responds that the trial court "acted within its discretion by rejecting . . . Relators' conclusory and unpersuasive arguments and evidence." Corvalla points out that, to satisfy their burden under *Braden* and *Casey*, Relators offered only Relator Chaiken's June 1, 2023 affidavit. Corvalla argues that "[s]even paragraphs in the affidavit are simply statements explaining why [Relator] Chaiken believes the [t]rial [c]ourt erred in granting the Motion for Sanctions—which has no probative value"— and that "[t]he four remaining paragraphs contain conclusory and unsubstantiated statements relating to the purported impairment immediate payment would have on

8

. . . Relators' ability or willingness to continue litigation. . . . The statements are conclusory," Corvalla contends, "because none purport to offer commentary on the totally [sic] of . . . Relators' financial circumstances."

In support of its argument that the trial court "was well within its discretion to conclude [Relator] Chaiken's affidavit failed to satisfy the standard necessary for competent or compelling evidence," Corvalla cites opinions by two of our sister courts—in cases that were decided after *Braden* but before *Casey*. *See In re Trivedi*, No. 01-16-00804-CV, 2018 WL 3733249, at *2 (Tex. App.—Houston [1st Dist.] Aug. 7, 2018, orig. proceeding) (mem. op.) ("Thus, beyond her conclusory statements in her filings, the mandamus record does not demonstrate that Trivedi offered evidence to meet her burden of showing that payment of the attorneys' fees would threaten her ability to continue the litigation."); *In re Knox*, No. 03-13-00614-CV, 2014 WL 538758, at *1 (Tex. App.—Austin Feb. 7, 2014, orig. proceeding) (mem. op.) (holding that relator's "conclusory statement" in verified motion that payment of monetary award would preclude her access to court failed to meet burden under *Braden* to demonstrate to trial court that payment of sanctions must be deferred); *see also In re Duncan*, No. 05-18-00674-CV, 2018 WL 3301600, at *1 (Tex. App.—Dallas July 5, 2018, orig. proceeding) (mem. op.) ("The party opposing the sanctions has the burden to show that the pre-judgment payment of sanctions threatens his willingness or ability to continue the litigation.").

To the extent that this authority imposes a burden of *proof* on a party rather

than just a burden to *plead*, we respectfully disagree with our sister courts. Under the plain language of *Braden* and *Casey*, the trial court's duty to either defer payment of monetary sanctions or make express written findings after promptly holding a hearing is triggered when the sanctioned party simply "contends that a monetary sanction award precludes access to the court." *Casey*, 589 S.W.3d at 856 (quoting *Braden*, 811 S.W.2d at 929). We do not read anything in *Braden* and *Casey* as imposing more than "good-faith pleading requirements" on the sanctioned litigant, *see Casey*, 589 S.W.3d at 855, and courts shall presume that pleadings, motions, and other papers are filed in good faith, Tex. R. Civ. P. 13. Indeed, we have conditionally granted mandamus relief to a party whose counsel merely "argued to the trial court that assessing the monetary sanction [opposing counsel] was requesting would result in a death-penalty sanction against [the sanctioned party] because he believed she did not have the funds to pay the sanction." *In re Spence*, No. 2-09-392-CV, 2010 WL 2555330, at *2 (Tex. App.—Fort Worth June 21, 2010, orig. proceeding) (mem. op.).

In their motion to defer, which was expressly based on *Casey*, Relators contended that "the money ordered to be paid to [Corvalla] needs—at this time—to be used by [Relators] to retain counsel and deploy them to seek further review of the sanctions order here or in the Court of Appeals." In his accompanying affidavit, Relator Chaiken made the following statements:

- "[T]he sanction has threatened my wife's and my ability and willingness to continue with the litigation, including prosecuting our well-grounded and meritorious compulsory counterclaims."

10

- "If we have to pay the sanctions immediately, I am concerned that payment of the sanction[,] combined with the potentially substantial costs of pursuing our rights in the trial court and courts of appeals, will render my wife and me unable or unwilling to continue to bear the cost of defending ourselves . . . ."

- "We cannot afford to pay the sanction, legal fees, and the cost of new housing that we are actively seeking[] at the same time and therefore request that the [trial c]ourt defer payment until final judgment in this case."

Then, at the hearing on the motion to sever and stay, Relators' attorney told the trial court:

> So they had to sell, you know, this what originally was intended to be kind of their dream retirement home, and because of all these construction issues they have had to move out. They have had to buy a new place that has required some renovation. They are now in a rental house, they're having to pay for that. So there is a lot of expenses going on right now. And to place the imposition of the [$]30,000 sanction award on top of that, as [Relator] Chaiken addresses in his affidavit, threatens their ability to defend and pursue this litigation.

We hold that these statements, in cumulation, sufficiently contended that having to pay the $30,000 sanction as ordered by the trial court "preclude[d] access to the court." *See Casey*, 589 S.W.3d at 855 (quoting *Braden*, 811 S.W.2d at 929); *Spence*, 2010 WL 2555330, at *4.

Corvalla also argues that the trial court had discretion and authority to consider and weigh the evidence Corvalla offered to show that Relators have the financial means to pay the sanctions without impairing their ability or willingness to continue prosecuting their counterclaims. It argues that the existence of conflicting evidence submitted to the trial court "otherwise precludes a finding it abused its discretion."

11

*See, e.g.*, *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978) ("An abuse of discretion does not exist where the trial court bases its decisions on conflicting evidence."); *see also Midwestern Cattle Mktg., LLC v. Nw. Cattle Feeders, LLC*, No. 02-17-00274-CV, 2018 WL 1414834, at *7 (Tex. App.—Fort Worth Mar. 22, 2018, pet. denied) (mem. op.) ("No abuse of discretion occurs when a trial court bases its decision on conflicting evidence in the record."). But a trial court has no "discretion" in determining what the law is or applying the law to the facts. *Walker*, 827 S.W.2d at 840. We can find an abuse of discretion when factual matters are in dispute if "the facts and circumstances of the case extinguish any choice in the matter." *In re Mahindra, USA Inc.*, 549 S.W.3d 541, 550 (Tex. 2018) (orig. proceeding). Because Relators had no *evidentiary* burden to *prove* that immediate payment of the $30,000 sanction would preclude their access to the courts, the fact that the record contains conflicting evidence as to their means to satisfy the sanctions order is immaterial.

Once Relators contended that the sanctions order precluded their access to the courts, the trial court had a binary choice: (1) provide that the sanction is payable only at a date that coincides with or follows entry of a final order terminating the litigation; or (2) make express written findings, after a prompt hearing, explaining why the award does not have such a preclusive effect. *See Casey*, 589 S.W.3d at 855 (quoting *Braden*, 811 S.W.2d at 929).

The parties do not dispute that the trial court held a prompt hearing, but

Relators complain that the trial court's express written findings fail to detail *why* Relators' rights or access to the court would not be impaired. We agree. At the hearing on the Motion to Defer, after receiving the evidence and hearing the parties' arguments, the trial court stated:

> When I read everything and make reasonable inferences, I find that I can and will make an express written finding that this [$]30,000 does not impair [Relators'] access to the courts. [Corvalla] has already had to spend, so I think there is an equitable thing, too. But inferring everything from the evidence before me, I will make that written finding and I will issue an order.

The trial court's order on the motion to defer contains only the following as far as a "finding": "The [trial c]ourt makes an express finding that the sanctions award of $30,000.00 against [Relators] does not have a preclusive effect on [their] access to the courts; immediate payment . . . will not impair [Relators'] access to the courts nor their ability to continue this litigation."

In its order denying Relators' motion to sever and stay, the trial court simply reiterated its finding "that the sanction amount does not significantly impair [Relators]' willingness or ability to continue this litigation." We hold that these "express written findings" are not of the kind contemplated by *Braden* and *Casey* because they do not explain "why" the award does not significantly impair Relators' willingness or ability to continue the litigation.[5] *See Casey*, 589 S.W.3d at 855 (quoting

---

[5]In their reply supporting their mandamus petition, Relators point out that certain emails on which Corvalla relies to support its claim of Relators' financial wherewithal predated by months the trial court's sanction award and are thus "not

13

*Braden*, 811 S.W.2d at 929). We therefore hold that the trial court abused its discretion by denying Relators' motion to defer and granting Corvalla's motion to compel without making express written findings concerning why the monetary sanction did not have a preclusive effect.

### B. Inadequate Remedy by Appeal

Having held that the trial court abused its discretion, we must now decide whether Relators have an adequate remedy by appeal. Corvalla contends that Relators can appeal the sanctions order after a final judgment is entered in this case. But Corvalla's argument is premised on the notion that the trial court complied with the requirements outlined in *Braden* and *Casey*—which we have determined it did not.

Here, as in *Spence*, "the trial court abused its discretion by ordering the sanctions to be paid [before a final judgment is entered] without making express written findings as to why the monetary sanction did not have a preclusive effect." 2010 WL 2555330, at *4. And, by doing so, the trial court has effectively prevented Relators from having an adequate remedy by appeal. *Id.* We sustain Relators' first issue.

## III. Relators' Second Issue: Trial Court's Refusal to Sever the Sanctions Order

In their second issue, Relators argue that the trial court abused its discretion in refusing to sever the sanctions award to allow for an immediate appeal before the

competent evidence of the impact—to Relators—of the sanction award at the time the award was made or by the time the award was ordered to be paid."

14

payment is required. They cite several cases that they say "acknowledge that severance of an interlocutory sanctions order can make the order final and appealable while the case in which sanctions were ordered continues to a merits disposition,"[6] but their argument about why it was an abuse of discretion for the trial court to deny their motion to sever and stay is limited to the following:

> When a sanctions order is imposed in a legal proceeding, it can have a significant impact on the rights and interests of the parties involved. Severing sanctions orders when appropriate is essential to maintain the integrity of the legal process as it allows the parties to address the sanctions separately, ensuring that they do not unfairly influence the outcome of the underlying case. Such a separation also prevents the potential prejudice that may result from the jury or factfinder considering the sanctions alongside the merits of the case, and avoids the possibility of a jury deciding the ultimate merits of the case being unduly influence[d] or confused by the presence of an interlocutory sanctions order. Because this case may not be disposed of finally until late March or early April of 2024 (the case is set for trial to begin on March 4, 2024) if not thereafter, Relators (especially Harvey) should be permitted to appeal the sanctions award on the merits, now. The only way such an appeal can occur, procedurally, is via a severance order that makes the sanctions order final and appealable in a new cause. . . .

They also quote the trial court's comments in the record that "if [it has] misplaced that burden or if the sanction or $30,000 award is overly severe, that should

---

[6]*See Am. Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 582 (Tex. 2006); *Pletta v. ORO AII Commerce, LLC*, No. 01-19-00966-CV, 2021 WL 5773882, at *1 (Tex. App.—Houston [1st Dist.] Dec. 7, 2021, pet. denied) (mem. op.); *Offord v. W. Hous. Trees, Ltd.*, No. 14-16-00532-CV, 2018 WL 1866044, at *1 (Tex. App.—Houston [14th Dist.] Apr. 19, 2018, no pet.) (mem. op.); *Shamoun v. Cisco Sys. Cap. Corp.*, No. 2-07-449-CV, 2008 WL 2717167, at *1–2 (Tex. App.—Fort Worth July 10, 2008, no pet.) (per curiam) (mem. op.) (recognizing "the general rule" that severance of an interlocutory sanctions order into a separate cause makes it final but concluding the severance order in question did not render the appealed orders final).

15

be -- could be dealt with on mandamus" and that "that's a proper response in the situation where maybe [the trial court] didn't get it right." But they provide no authority supporting their argument that it was "appropriate" and "essential" that the trial court sever the sanctions order. "Mandamus relief is only appropriate when the relators have established that only one outcome in the trial court was permissible under the law." *In re Murrin Bros. 1885, Ltd.*, 603 S.W.3d 53, 56 (Tex. 2019) (orig. proceeding). It is meant for circumstances involving manifest and urgent necessity and not for grievances that may be addressed by other remedies. *Id.* at 57. Just because the trial court *could have* severed the sanctions order does not mean that severance was the *only* outcome that was permissible under the law.

Furthermore, in light of our disposition of Relators' first issue, Relators will have an adequate remedy by appeal. As we wrote in *Spence*, "the imposition of monetary sanctions, such as attorneys' fees, is reviewable on appeal from a final judgment and, for that reason, is not subject to mandamus." 2010 WL 2555330, at *3. Whether the trial court defers Relators' payment obligation or makes express written findings as required by *Braden* and *Casey*, Relators will have an opportunity to appeal the sanctions order, and any other appealable order, after a final judgment is entered. Because Relators have not established that the trial court abused its discretion by denying their motion to sever and stay, nor that they lack an adequate remedy by appeal, we overrule their second issue. *See, e.g., City of Houston v. Hous. Mun. Emps. Pension Sys.*, 549 S.W.3d 566, 577 (Tex. 2018) ("Mandamus will issue only to correct a

16

clear abuse of discretion or the violation of a duty imposed by law when there is no other adequate remedy by law." (internal quotations omitted)).

**Conclusion**

Relators ask us to order the trial court "to vacate the [o]rder granting sanctions against Relators." But Relators have not shown that the trial court abused its discretion in sanctioning them, only that it abused its discretion by failing to follow *Braden* and *Casey*. The merits of the sanctions order itself are not at issue in this mandamus proceeding. We therefore deny Relators' petition in part to the extent it requests us to compel the trial court to vacate the sanctions order.

We conditionally grant Relators' petition for writ of mandamus in part and direct the trial court to enter a new order either (1) providing that the $30,000 sanction is payable only at a date that coincides with or follows entry of a final order terminating the litigation or (2) including express written findings explaining *why* ordering that the $30,000 sanction be payable before the entry of a final judgment does not preclude Relators' access to the courts. *See Spence*, 2010 WL 2555330, at *4. We are confident that the trial court will comply with this order. The writ will issue only if the trial court fails to comply within twenty days of this opinion. The temporary stay that this court issued on October 25, 2023, is ordered dissolved upon the trial court's compliance with this court's order in this opinion. All other requested relief is denied.

17

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Delivered:  December 14, 2023